The Overseers of the Poor of Forks Township in Northampton County *against* The Overseers of the Poor of Catawessa Township in Northumberland County.

*Sunbury,*
*Monday,*
June 11.

THE pauper, *Samuel Williamson,* his wife and two children, were removed by an order of two Justices from the township of *Catawessa* to the township of *Forks;*

A slave has a settlement in the township where his master resides, which is bound in the first instance to support him, though it may have a remedy over against the master or his estate. So in the case of a manumitted slave, who has not acquired a settlement elsewhere, after his manumission. Vide act of 29th *March* 1803, sec. 28. 5 *St. Laws* 536.

and upon appeal to the Quarter Sessions of *Northumberland*, the order of removal was confirmed, and the proceedings brought to this court by *certiorari*.

It appeared upon the hearing, that the pauper was the property of *John Arndt*, of *Forks* township in *Northampton* county, who recorded him as his slave on the 23d of *October* 1780, stating him to be then of the age of thirty-five. After remaining for some time with *Arndt* as his slave, *Arndt* manumitted him, but no deed of his manumission was entered of record. Subsequent to this manumission, the pauper left *Forks*, and went to *Whitehall* township in the same county, where he married and had children; but he never gained a settlement in any place after he left *Forks*, nor did he ever after his marriage reside in *Forks*. He first became chargeable in the township of *Catawessa*.

*Hall*, for the overseers of *Forks*, argued against the order of removal, from the terms of the 6th section of the act of 1st *March* 1780, 1 *St. Laws* 838, which provides that the owner of any slave at the passing of that act shall be liable to the overseers of the township where such slave *shall become chargeable*, unless the owner, before the slave attains his 28th year, shall execute and record in the proper county, a deed of manumission. The law therefore contemplates in such a case as this, the liability in the first instance of the township where the slave becomes *chargeable*, and in the next place the *owner;* but it does not speak of settlement; it does not consider him as having any settlement, or as being able to obtain any; it merely provides for the case of his having an owner, and of his being chargeable *in fact* to some township or other, which embraces all the provisions that are necessary in the case of a pauper slave. Here the pauper became *chargeable* in *Catawessa*, and that township must indemnify itself by recourse to *Arndt* or his representatives; it cannot remove the pauper to *Forks*, because he was incapable of gaining a settlement there as a slave; and he never gained a settlement there after his manumission. Indented servants stand upon a different footing; the master is not bound to support them, and they are held to acquire a settlement where the master resides. But the law for the abo-

lition of slavery compels the master to maintain the slave unless he manumits him before twenty-eight, and therefore no settlement is necessary. The poor laws do not say any thing of the settlement of slaves.

*Duncan*, in support of the order, contended that a slave has a settlement in the township where his master resides. The section of the act referred to shews that as a slave he can have a settlement somewhere, because in technical language, a township is not *chargeable* unless the pauper has a settlement there; unless he is *irremovable*. Where then can he have a settlement during his slavery, except where his owner resides? The case of an indented servant holds *à fortiori* as to a slave, because the latter is emphatically bound to his master. It is true that in the present case, the master must ultimately answer to the township, in consequence of the manumission's coming too late; but that does not affect the question, by what township is he to be supported in the first place. Suppose the master is insolvent, or absent from the state, must the pauper perish? *Williamson* had a settlement in *Forks*, and has never acquired one elsewhere. His children go with him, and so does his wife during marriage, even if she had a settlement of her own before. The opposite argument would fix the burden of maintaining the pauper, upon the first township through which he should happen to pass, after he ceased to be able to help himself.

TILGHMAN C. J. delivered the court's opinion.

*Samuel Williamson*, a pauper, and *Elizabeth* his wife, with their two children, were 'removed by an order of two justices of the peace of *Northumberland* county, from *Catawessa* township in the said county, to *Forks* township in the county of *Northampton*. The overseers of *Forks*, appealed to the Quarter Sessions of *Northumberland* county, who affirmed the order of removal, and their proceedings have been brought before this court by *certiorari*.

It appears that the pauper was the slave of *John Arndt*, deceased, of *Forks* township, who recorded him as such, of the age of thirty-five years, on the 23d of *October* 1780;

agreeably to the provision of the act of 1st *March* 1780. After having remained the slave of *Arndt* for some time, the pauper was manumitted by deed not recorded. He afterwards left *Forks* township, married, had children, and has lived in various places, but gained no settlement. The counsel on both sides agree, that inasmuch as the pauper was not manumitted before the age of twenty-eight years, the estate of *Arndt* is liable for his maintenance, but the question is, which of the contending townships, must be at the charge of maintaining him in the first instance? It is not pretended that he has gained a settlement in *Catawessa;* but the overseers of *Forks* say, that he ought not to be thrown upon them, because he has gained no settlement there; in other words, he has a settlement *no where*, because the estate of *Arndt* is to maintain him. This argument appears to me to be not well founded. It does not appear by the record, that *Arndt* left any estate. But taking for granted that he did, the pauper is not to be left starving, until the representatives of *Arndt* can be compelled to maintain him. The question is, whether the township, in which the master of a slave resides, is not in the first instance bound to support him, in case he falls into distress? I apprehend it is. So I understand, has the law been taken, although it is not expressly declared so by any act of assembly. Indented servants gain a settlement in the place where they serve their time; and it would be a reflection on humanity to say, that a manumitted slave was intitled to no support in case of the insolvency of the master, or his neglect to support him. It is necessary that there should be some township to which he may look for immediate relief. This seems to have been always taken for granted, because by the old laws of the former province, the person manumitting a slave was obliged to give security to indemnify the township. I am therefore of opinion that the order of removal was legal, *Forks* township being in the first place chargeable with the pauper's maintenance. They may take their remedy against the estate of *Arndt*. It is unnecessary to say any thing about the wife and children, because they follow the settlement of the husband and father.

1810.

OVERSEERS
of
Forks
*v.*
OVERSEERS
of
Catawessa.

Order of the sessions confirmed.