The Courts’ opinion was delivered by
Gibson J.
In 1780, when the act for the gradual abolition of slavery was passed, the pauper was a slave of the age of thirty years. In 1796, James Jenkins, his master, residing in Ruffaloe township, Northumberland county, sold him to John Patton, who resided in what is now Ferguson township, Centre county, with whom he lived several years, but whom he eventually left; after which, he returned to Northumberland county, where, for a few years, he supported himself by his labour. Whether the registry exhibited, Was intended to be applicable to the person of the pauper, is very doubtful, as the name is illegible, and the original return of the master being lost, there is nothing to fix its meaning. Were this a question of freedom, therefore, between the slave and his master, whose duty it was to see that the registry was complete, that matter having been left doubtful, would perhaps, be decisive in favour of the slave ; and we shall, for all the purposes of the argument, consider him as having acquired a title to freedom under the provisions of the act. But granting this, still, as the pauper continued to be a slave till after the age of seventy-eighty the master is bound to afford him a maintenance proper for his condition. Butin The Overseers of Forks v. The Overseers of Catawessa, 3 Binn. 22, it was held, that a slave has a settlement in the township where his master resides, which is bound to support him in the first instance, and take its remedy over, against the master. Here the. question is, which township shall maintain him, till the master can be compelled to take the burthen on himself; and it is argued, that .as the pauper could gain a settlement, only in virtue of being a slave, his rights as such, and the correspondent liability of the master, were fixed at, and are to be viewed in relation to, the moment when the pauper became free; and hence, that being afterwards carried into another township, as a slave de facto, he could gain no new settlement, nor could the person who acted as his master, incur any new liability for his maintenance. As to liability acquired, or to *105 speak more properly, continued, after the defective registry in 1780, I consider Patton as standing exactly in the place of Jenkins; for the latter had exercised ‘a controuling power' over the pauper ; his authority, such as it was, was transferred to the former. As between themselves, Patton might, perhaps, dispute the legality of the servitude; but could he do so against the slave worn out in his service ? Then if Jenkins himself had carried the pauper as a slave into Ferguson township, it cannot be pretended he would not have been bound to maintain him. But the argument recurs, that he would have been bound, only on a liability, which was consummated at the expiration of the slavery; after which, began a new relation between him and the pauper, which could give the latter no new settlement, and that the settlement which he had already gained, could not shift with the residence of the master, after he ceased to be such. This argument proceeds on the ground, that the relation of master and slave was, to every intent, dissolved by the defect in the registry, under the act of 1780. But the pauper was held, at least, by colour of right. If, therefore, he continued with the master as a slave, whether ignorantly or voluntarily, until he became unable to make a provision for his old age, it would be inhuman to permit the master to deny the legality of the servitude, and thus get rid of the duties he would else have to fulfil. As, then, the master would be estopped from controverting the legality of the servitude, I know not how the township can claim to be put in a better situation. The overseers should apprise the slave of his right to freedom, while it may be a benefit to him, or ever after be silent on that subject. Then, if the relation of master and slave be valid in favour of the slave, the right of settlement against the township, results of course. The cases cited, shew, that circumstances necessary to constitute a settlement, are not to be too nicely scanned: to which may be added, The King v. The Inhabitants of St. Petrox, Burr, Settl. cases, 248. No. 84, which comes rather nearer to the point. There it was held,, that where the servitude was continued under an indenture which was not binding between the parties, such indenture was neither void, nor voidable by the parish, as to gaining a settlement; the Court adding, that “ it would be extremely hard, that a poor child, who *106 had served ten years under an indenture .of apprenticeship; should lose the benefit of her settlement, because the justice’s clerk, who made/the indenture, happened to be either ignorant or negligent.” This is a principle of humanity and justice. In many cases, whenever the express words of a statute seem to make things nullities, they must be regularly avoided, before they shall be considered absolutely such. Rex v. The Inhabitants of St. Nicholas. Burr, Settl. cases, 91. No. 28. But here, the act of 1780, does not, in express terms, render the servitude of an unrecorded negro, void. Wherever, therefore, there has, by colour of right, been such a servitude as would, if it had been in all respects legal, have gained a settlement, no defect in the registry can be taken advantage of, to deprive the pauper of the miserable advantages of a state of legitimate slavery, if any slavery can be legitimate. I think it altogether unnecessary to enquire, whether Colonel Patton, himself, had a settlement in Ferguson township, as the slave’s right does not depend on the settlement of the master, but his residence. It is therefore considered, that the order of the sessions be quashed, and that the order of the two justices be affirmed; and that the costs and charges, (if any,) of removing the pauper to Buffaloe, be refunded to the overseers of that township.
TiLghman C. J., was ill, and did not sit.
Order of the Sessions quashed;